Statement of the Case.
MONROE, J.
Relator seeks, by mandamus, to compel tile city of New Orleans and the recorder of mortgages to cancel certain inscriptions for city taxes of 1891 and 1892 standing against property to which he asserts title under an adjudication made by the city treasurer in July, 1895, for city taxes of 1893 and 1894. The city answers that the properey in question was adjudicated to it in May, 1894, for its taxes of 1891 and 1892; that the treasurer was without authority thereafter to adjudicate it to the relator for the taxes of 1893 and 1894; and that its title is unaffected by such adjudication. The undisputed facts are that in May, 1894, the city treasurer, professing to proceed under Act No. 119, p. 167, of 1882, and Act No. 85, p. Ill, of 1888, advertised for sale, and, in default of bidders, adjudicated to the city, for its taxes of 1891 and 1892, certain property assessed to Sam Boyd, and the adjudication was followed by a notarial act of sale, duly recorded, but not by any taking of actual possession of the property. In July, 1895, the city treasurer, professing to act under the same law, advertised the same property for sale under assessments in the same name, and adjudicated it to W. S. Benedict, for city taxes of 1893 and 1894; and this adjudication was followed by a notarial act of sale, duly recorded, by a ratification thereof by the tax debtor, and by a taking of possession by Benedict, to whom, since 1896, the property has been assessed, and by whom, since the date of his purchase, the taxes have been paid. The amount for which the property was adjudicated to Benedict was 8801.74, which was paid in cash, and which, we assume, was turned into the city treasury; and neither the procés verbal of the adjudication, nor the act of sale confirmatory thereof, -indicates that any other consideration was expected from the adjudicatee, or that the city had any further claim upon, or interest in, the property.
Opinion.
The counsel for the city say in their brief:
“This case presents but one issue: Can the city treasurer sell, for current taxes, pursuant to the provisions of the general revenue act, property which has already been adjudicated to the city of New Orleans for unpaid taxes? * * * It is true that the relator has been in possession of the property for a number of years, and it may be that he has paid taxes to respondent thereon, but we do not see how these facts will justify the court in maintaining relator’s title if the same was a nullity ab initio. Estoppel is not one of the means of acquiring title in Louisiana.”
The Act No. 119, p. 167, of 1882, referred to in the foregoing statement, authorized political corporations, through their treasurers, or other officers charged with that duty, to collect taxes in the manner provided, or that might thereafter be provided, for the collection of state taxes; and the city treasurer undertook, in the instant case, to proceed in accordance with the provisions of Act No. 85, p. Ill, of 1888, which was a general law regulating the collection of taxes. Conceding, arguendo, that he conformed to that law so far as concerned the advertisement of the property for taxes of 1891 and 1892, and its adjudication to the city, its provisions were utterly disregarded in all other respects, since its section 59 makes it “the imperative duty of the tax collector to take actual possession of the property bid in * * * for unpaid taxes, and to lease or rent the same,” etc.; and in this instance the tax debtor was left in possession, and the property continued to be assessed in his name, not for one year only, but for several years, and even after, *411 in 1895, it had been adjudicated to the relat- or. Beyond this, Act No. 85, p. Ill, of 1888, contained no provision for the sale of adjudicated property, which was regulated, so far as the state was concerned, by Act No. 80, p. 88, of 1888, and no attempt was made by the city to comply with the latter statute in disposing of the property in question. It will be observed, however, that the act of 1882 does not make it compulsory upon municipal corporations to enforce the collection of their taxes in the manner provided for the collection of state taxes, from which it follows that even if the city had originally complied strictly with Act No. 85, p. Ill, of 1888, she was not obliged thereafter to pursue the course prescribed for state officers by Act No. 80, p. 88, of 1888, but might, as apparently she did, abandon the adjudication, and again proceed against the property upon the basis of current assessments for the collection of current taxes. It has several times been held that a tax purchaser will not be heard to question assessments, under which property has been sold to him, upon the ground that they have been erroneously made in the name of the tax debtor, and not of the state. State ex rel. Martinez v. Tax Collector & City, 42 La. Ann. 677, 7 South. 796; Breaux v. Negrotto, 43 La. Ann. 426, 9 South. 502. And if the tax purchaser cannot question such assessments, neither can the state or city by whom the sale is made. Applying these conclusions to the case at bar, the city, having sold the property in question to the relator under its assessments for taxes of 1893 and 1894, having received the proceeds of the sale, and having thereafter for years assessed the property to the adjudicatee, cannot now be heard to say that the action of the treasurer was unauthorized, and that the adjudicatee acquired no title, or that she has a claim against the property which existed before and has survived the sale.
“A municipal corporation,” says Judge Dillon, “may ratify the unauthorized acts and contracts of its agents and officer? which are within the scope of the corporate authority, but not otherwise. Ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals.” Dillon’s Mun. Corp. (4th Ed.) vol. 1, § 463.
A stricter rule should, no doubt, be applied in cases involving the public property of municipal corporations, or what is known as the private property of such corporations, of which it is the owner in the usual sense of the term, and in actual possession; but this court has, in a recent case, recognized the difference between such property and that which is held merely as a means of collecting the taxes assessed against it, and has said:
“Property adjudicated to the city in the enforcement of city taxes does not become public property, ipso facto, independently of its after use by the city, and independently of the legality of the tax proceeding, so as to exempt it from assessment and sale for state taxes.” State ex rel. Lindner v. City of New Orleans, 110 La. 406, 34 South. 582.
Eor these reasons, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed.