LAND, J.
This suit was filed in January, 1908, by the heirs of Jackson C. Holland, who died in 1866, to annul-two tax adjudications of certain lands to the state of Louisiana, one of date November 4, 1873, and the other of date May 16, 1806, and to recover said property as owners.
The defendant is alleged to be in possession of said lands as owners, through mesne conveyances extending back to said Jackson B. Holland, and to claim title 'through said purported tax sales and tax deeds.
*407 The petition alleges that said land is and always has been woodland and unoccupied, except that a considerable portion of the same was deadened in 1860 by said Holland, and is now worth the sum of $20,000.
The petition avers in general terms that both of said tax sales were illegal, invalid, and absolutely void for want of valid assessments, advertisements, and notices, and that 'the purported tax deeds were not translative of property, and were not made in compliance with the requirements of the revenue acts under which said sales were attempted to be made.
The tax sale of 1873 is specially assailed on the following grounds:
(1) That said Holland was always a nonresident of the state of Louisiana, and no curator ad hoc was appointed to represent him, as required by the statute.
(2) That said property was sold for the delinquent taxes of the years 1863, 1866, 1870, and 1871, when the lien and privilege for taxes, and the taxes themselves for the years 1865 and 1860, had been prescribed long prior to the date of said -tax sale.
(3) That the state taxes for said years did not amount to the sum of $422.88, but, as the record show, to only $375.
(4) That said property was sold, as shown ■ by the deed, to pay -the delinquent taxes for said years amounting to $421.88 and to pay damages amounting to $357.81, when there, was no law in existence authorizing the imposition of any damages, interest, or penalties.
(5) That under Act No. 47, p. 98, of 1873, under which said tax sale purports -to have been made', the tax collector could sell only to pay the delinquent taxes and lawful costs.
The tax sale of 1896-is assailed on the following grounds:
(1)That the property was sold for the taxes of 1892, 1893, 1894, and 1895, on an assessment made February 12, 1896, on which day purported supplemental tax rolls for said years were filed, when the law prohibited the collection of back taxes for more-than three years.
(2) That the tax and tax lien for 1892 had prescribed long before the filing of the supplemental tax roll.
(3) That said property was sold for taxes- and interest amounting to $693.33, in which amount was included $53.79 of interest' and penalties on levee taxes not warranted by law.
(4) That in the total amount were included levee taxes, both ad valorem and acreage, without warrant of law.
(5) That under article 210 of the Constitution of 1879 nó valid tax sale could be-made for more taxes or interest than were-due.
(6) That the attempted sale and assessment of said property in 1896 under instructions of the commissioners'of the levee district was a recognition of the title of plaintiff’s ancestor, and estopped the taxing authorities and the defendant to claim title-under said sale of 1873.
Plaintiffs alleged a willingness to repay the taxes that may haye been properly paid on said lands, and prayed for judgment decreeing said tax sales to be null and void,, and recognizing them as the lawful owners-of the property.
Defendant pleaded the prescription of 5, 10, and 30 years, and the prescription of 3: years under article 233 of the Constitution; of 1898.
Defendant further pleaded'estoppel against plaintiffs, alleging that their ancestor purchased the property on a credit in I860,, never paid a dollar of the purchase price,, never had any actual possession of the property, never paid any taxes thereon, and that he and his heirs for 48 years asserted no-claims of ownership to the lands in controversy.
*409 The ease was tried on the idea of prescription, and, from a judgment in favor of the ■defendant, the plaintiff has appealed.
J. O. Holland purchased the lands in dispute entirely on a credit from Louis Selby in November, 1SG0. The mortgage securing the payment of the pri'ce was never canceled on the records, in whole or in part, .and was reinscribed in 1870. It is not pretended that J. O. Holland, or heirs, have ■ever paid any taxes on the property. It is .admitted that'J. C. Holland caused the timber on a part of the lands to he deadened. Holland was an officer in the Confederate army. He died in 1866, and there has never been any administration of his estate.
In 1S73 the lands in dispute were adjudicated to the state of Louisiana for taxes due by ,1. O. Holland on assessment rolls for 1SG5, 1866, 1870, and 1871, subject to redemption by the owners or any creditor at any time within six months.
In June, 1S89, these lands were deeded by the State Auditor to the hoard of commissioners of the Fifth Louisiana levee district.
On May 16, 1896, the same lands were adjudicated to the state of Louisiana for taxes of 1892, 1893, and 1894, and for taxes of 1895, on assessment against “unknown owner; J. C. Holland, last known owner.” This adjudication was made under Act No. 85, p. 111, of 1888, and the deed recites that all the requirements of the statute as to notices, advertisements, etc., were strictly observed.
In November, 1897, the lands so adjudicated were again deeded by the State Auditor to the board of commissioners of the Fifth Louisiana levee' district, which in 1900 sold the same to the North Louisiana Land Company. Defendant acquired title in March, 1903, from the assigns of the said purchaser from the levee district. It is admitted that from 1901 to 1908, inclusive, the property has been regularly assessed to the holders of the title derived from the levee board, and all taxes so assessed have been paid by them. It is further admitted that the defendant purchased in good faith, believing that the title was good.
It appears that in July, 1895", the said hoard of commissioners, being advised that its title to said lands based on the tax adjudication of 1873 was defective, passed a resolution requesting the assessor to place. the same on rolls for hack taxes for 1832, 1893, and 1894, and for current taxes. Supplemental rolls for each of said years were made out and were actually filed by the clerk of the district court on February 10. 1896. The tax deed of May 16, 1896, recites that said assessment rolls were on file in the office of the tax collector.
The legal presumption is that these rolls were made out by the assessor of the parish pursuant to the request of the board of commissioners and that they were timely deposited in the proper offices. The circumstance that the assessor’s name does not appear on the first page, and that the rolls were not indorsed as filed in the clerk's office until February 10, 1896, may have been irregularities, but certainly were not absolute nullities, incurable by prescription. There were tax assessments, and the rolls were filed In the proper offices more than three months before the tax sale.
In Terry v. I-Ieisen, 115 La. 1070, 40 South. 461, this court held that the constitutional prescription of three years validated a tax sale based on an assessment to a person without color of title, and made without notice to the owner. Inter alia, -the court said;
“So long, therefore, as the property is actually assessed, whether in the name of one person or another, or in no name, there is an intelligible basis for the levy, and for the sale.to enforce the payment of the tax; and if the law, to which alone he can look for his remedy, provides that the owner must bring the action to *411 annul said sale within three years, or else that such action will be barred, he must comply with the condition imposed or suffer the consequences imposed.”
In Lavedan v. Choppin, 119 La. 1056, 44 South. 886, the tax title was assailed on the ground that the property was not assessed for the year 1886, nor advertised in the time and manner required by law; but this court held that these grounds were barred by the constitutional prescription of three years, affirming Terry v. I-Ieisen, snpra.
The ground that the taxes of 1892 were prescribed when the supxfiemental roll was filed we do not think is well taken.
Under section 34, Act No. 98, p. 145, of 1886, the prescription of three years runs for the filing of the tax roll. Whether this section was repealed by Act No. 85, p. Ill, of 1888, under which the tax sale in question was made, need not be determined in this case.
The allegation that more than three years’ back taxes were assessed against the property, in violation of section 11, Act No. 85, p. 116, of 1888, is bottomed on the bare fact that the supplemental rolls were filed by tbe clerk of tbe court of date February 10, 1896. The filing of the tax rolls marks the completion of the work of assessment and review, and usually is done several months after the listing of the property by the assessor. Hence in the instant case the mere date of the filing does not prove the date of the assessment of the lands in question, or of the deposit of rolls in the proper offices. Under section 32, Act No. 85, p. 124, of 1888, the failure of the recorder to mark the tax rolls “filed” does not prejudice the rights of the state. The presumption of law is that the assessor in listing the property did not violate section 11, Act.No. 85, p. 116, of 1888, but made his assessment in 1895 (as he was requested to do by tbe board of commissioners) for three years’ back taxes and tbe current taxes for 1895.
Tbe tax sale was made on the same day as other tax sales for delinquent taxes for the year 1895 and previous years, and on the tax rolls on file In the office of the tax collector. The presumption is that such rolls were made out and deposited in the year 1895.
At the tax sale, in default of a bidder, the property was adjudicated to the state of Louisiana, subject to redemption for one year, pursuant to section 53, Act No. 85, p. 130, of 1888.
Plaintiffs allege that the property was sold in part for levee taxes and for interest or penalties on levee taxes without warrant of law.
Tbe property was sold for state tax, levee tax, acreage tax, and parish tax, with 10 per cent, interest on each, and- for costs.
Article 210 of the Constitution of 1879 provided for the collection of “levee district” taxes in the same manner as state, parochial, and municipal taxes; and article 218 declared that:
“All the articles and provisions of this Constitution regulating and relating to the collection of state taxes and tax sales shall also apply to and regulate the collection of parish, district and municipal taxes.”
Act No. 44, p. 56, of 1S86, creating the Fifth Louisiana levee district, empowered the board of commissioners to levy a five-mill district tax and a tax of five mills on each and every acre of land within the district, to be assessed and extended on the tax rolls and collected in the same manner as state taxes. This legislative mandate was sufficient warrant for the extension of the levee taxes on the supplemental rolls in question. If levee taxes are to be collected in tbe same manner as state taxes, the same coercive measures in the way of penalties must be employed. The acreage tax is a creature of the Legislature, and there is nothing in the organic law that inhibits tbe Legislature from attaching a penalty for its nonpayment. In fact, its collection would otherwise be difficult, if not *413 impracticable. It has been the uniform practice in this state to collect levee taxes of all kinds in the same manner as state and parish taxes. The penalty was 2 per cent, per month for five months, including the month of May, in which the sale was made.
In Woodfolk’s Heirs v. Witkowski, 120 La. 490, 45 South. 401, similar in its facts to the ease at bar, it was alleged as ground for nullity of the tax sale that the price was “composed of pretended damages not authorized by any law, * * * and of illegal, excessive taxes, costs, and charges.” The court in conclusion said:
“Plaintiffs urge that the properly was seized and sold, not only for the taxes due on the property, but for damages and penalties. The deed states that it was sold for the delinquent taxes. After it was sold the price was applied, as far as it went, to the payment of tax penalties. If there was any misapplication of the price, that fact did not affect the sale. Plaintiffs’ remedy on that score was not to set aside the sale. As matters are disclosed in the record, we do not think that defendant was required to support his title by invoking prescription. Had that plea been necessary for the purposes of this case, we think it would have been properly invoked and sustained.”
There was an actual assessment of the property for taxation, and taxes were due thereon to the state, parish, and levee board. There was an actual tax sale of the property, evidenced by formal tax deed of adjudication to the state of Louisiana. The defects complained of are dehors the deed.
Article 210 of the Constitution of 1879 provided that:
“All deeds of sale made, or that may be made, by collectors of taxes, shall be received by courts in evidence as prima facie valid sale.”
Article 233 of the Constitution of 1898 contains the same provision, and declares that:
“No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted * * * within three years from the adoption of this Constitution as to sales already made.”
By the very terms of article 233, a deed of sale by a tax collector in substantial compliance with the requirements of the statute cannot, after the lapse of three years, be set aside for any cause, except on proof of dual assessment, or of the payment of the taxes for which the property was sold. This prohibition bars inquiry as to all other causes of nullity. In Canter v. Heirs of Williams, 107 La. 77, 31 South. 627, this court said:
“After the lapse of three years from the adoption of the Constitution, the party in possession under his tax title, duly recorded, cannot be disturbed, except for the two causes mentioned in article 233 — that of dual assessment and that of antecedent payment of taxes.”
. This court has never departed from this doctrine, based as it is on the plain words of the Constitution.
In Harris v. Deblieux, 115 La. 147, 38 South. 946, and in Doullut v. Smith, 117 La. 506, 41 South. 913, a part of the taxes had been paid, and in Booksh v. Company, 115 La. 351, 39 South. 9, the taxes had been paid under a duplicate assessment.
Judgment affirmed.